UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| L.B., by and through her next friend Judith Burk, ) ) ) Plaintiff, ) ) vs. ) ) MISSOURI DEPARTMENT OF ) CORRECTIONS, et al., ) ) Defendants. ) | Case No. 4:08CV2000 CDP |

## MEMORANDUM AND ORDER

Douglas Burk suffered a fatal heart attack while an inmate at Farmington Correctional Center. His personal representative brings this action against Correctional Medical Services,[1] the prison's health care provider, under 42 U.S.C. § 1983 for alleged Fifth, Eighth, and Fourteenth Amendment violations. Plaintiff also brings a state law wrongful death claim. CMS moves for summary judgment on the ground that plaintiff cannot prevail on her claims as a matter of law. I will grant summary judgment on plaintiff's § 1983 claim and decline to exercise jurisdiction over her state law claim for the reasons that follow.

---

[1] During the relevant time period, the Missouri Department of Corrections contracted with CMS to provide inmates housed at FCC with health care services.

Legal Standards Governing Summary Judgment

In considering a motion for summary judgment, the court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). As the moving party, defendant must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy." Putman v. Unity Health System, 348 F.3d 732, 733-34 (8th Cir. 2003) (internal quotation marks and citation omitted). A party may not merely point to unsupported self-serving allegations, but must substantiate allegations with

sufficient probative evidence that would permit a finding in the plaintiff's favor. Wilson v. International Business Machines Corp., 62 F.3d 237, 241 (8th Cir. 1995).  "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. 242 at 252; Davidson & Associates v. Jung, 422 F.3d 630, 638 (8th Cir. 2005).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).  Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact."  Howard v. Columbia Public School District, 363 F.3d 797, 800 (8th Cir. 2004); Reed v. City of St. Charles, Missouri, 561 F.3d 788, 791-92 (8th Cir. 2009).  Under these standards I review the facts in this case.

## Background Facts[2]

On December 29, 2005, Burk complained that he was having trouble breathing.  A correctional officer reported his complaints to CMS employee

---

[2]I am finding these facts only for summary judgment purposes.

Debbie Arcand, a licensed vocational nurse, who came to the housing unit to evaluate him.  Arcand claims that Burk told her that he was not on cardiac medications at the time, but that he did have a cardiac stent and that he had a hot flash.  Burk weighed 316 pounds and had a history of myocardial infarction.  Arcand took Burk's blood pressure and sugar and listened to his lungs.  She observed that he was pale and his brow was sweaty, but his body was warm and dry.  Arcand decided Burk was probably having an anxiety attack or coming down with the flu.  She did not recognize any of these symptoms as being associated with cardiac distress.  Arcand testified that a patient must experience pain before she would suspect a heart attack.  Instead, she simply told Burk to tell the correctional officer if he had any more problems, and she went back to the medical unit.  She did not contact the physician on call or registered nurse on duty about Burk.

    Arcand then got another call telling her that Burk was vomiting.  Again, Arcand testified that this symptom did not make her suspect that Burk was having a heart attack.  Arcand told the correctional officer that Burk must come to the medical unit to be evaluated to receive any medication and that Burk probably would not obtain any medicine if everything "checked out."  Burk did not come to the medical unit, and Arcand did not go back to the housing unit to check on him

or contact the doctor.

Later, a correctional officer called Arcand to report that Burk was having a seizure. This time, Arcand went to the housing unit to see Burk. She found him lying on the ground, unconscious, with blue lips and mucus coming out of his mouth. Burk was not breathing, so Arcand performed CPR while the guard called the registered nurse on duty and emergency services. However, Burk was not revived and died of a heart attack on December 30, 2005.

Plaintiff's expert witness, cardiologist Matthew Bosner, M.D., testified that Burk's shortness of breath, sweaty brow, and vomiting, when supplemented by Burk's cardiac history, indicated that Burk was having another heart attack. He also testified that Arcand's insistence on pain as a necessary indicator of a heart attack was wrong and that if Burk had received appropriate cardiac treatment when he first complained to Arcand that he would have likely survived.

Plaintiff filed the instant action on December 29, 2008. Her original complaint named the Missouri Department of Corrections, Tom Clements[3], Dan Bullock,[4] and CMS in the caption as defendants. However, the complaint states no claims against CMS. Instead, Count I is directed against a CMS "John Doe" --

---

[3] Plaintiff alleges that Clements is the Director of the MDOC.

[4] The complaint alleges that Bullock was the supervisor of the deputies at FCC.

who is not named in the caption of the complaint -- under § 1983 for being deliberately indifferent to Burk's serious medical needs.  The remaining two counts are directed at a deputy "John Doe" -- also not named in the caption -- and Bullock, MDOC, and Clements.  Although plaintiff pleads that she is entitled to bring the lawsuit under Mo. Rev. Stat. § 537.080 et seq., the complaint states no state law claims against any defendant.

On April 8, 2009, plaintiff was granted leave to file an amended complaint.  The amended complaint is the same as the original complaint, except that plaintiff pleads that Clement is sued in his individual and official capacities.  On April 30, 2009, I dismissed plaintiff's claims against MDOC and Clements.  In that Memorandum and Order, I specifically noted that plaintiff's amended complaint alleged no state law claims.  On May 6, 2009, I granted plaintiff's motion to dismiss her claims against Bullock without prejudice.   At no time did plaintiff ever seek leave to substitute Nurse Arcand (or any other CMS employee) for the CMS "John Doe" named in Count I of the complaint or amended complaint.

Without objection, plaintiff filed a second amended complaint on November 13, 2009.  The second amended complaint names CMS as the sole defendant.  No "John Does" are named in the caption or the body of the complaint.  Count I of the second amended complaint alleges violations of Burk's Fifth, Eighth, and

Fourteenth Amendment rights under § 1983. Count II is a wrongful death claim brought against CMS under Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080.

CMS now moves for summary judgment, contending that plaintiff has no evidence that Burk's death resulted from any unconstitutional policy or custom as required to impose § 1983 liability upon CMS. CMS also claims that plaintiff's wrongful death claim is barred by the applicable three-year statute of limitations.

### Discussion

In Count I of the second amended complaint, plaintiff alleges that CMS was deliberately indifferent to Burk's serious medical needs in violation of his constitutional rights. In a § 1983 action such as this, a plaintiff may not rely on the doctrine of respondeat superior. Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990); Dashley v. Correctional Medical Services, Inc., 345 F. Supp. 2d 1018, 1021 (E.D. Mo. 2004). Instead, plaintiff must show a company was acting under color of state law and engaging in its own unconstitutional policies. West v. Atkins, 487 U.S. 42, 48 (1988). A company acts under color of state law when it can be characterized as a state actor. Id. at 49. Here, the parties agree that CMS is fairly characterized as a state actor. See id. at 57 ("[R]espondent's delivery of medical treatment to [inmate] was state action fairly attributable to the State, and

that respondent therefore acted under color of state law for purposes of § 1983."); Dashley, 345 F. Supp. 2d at 1021 (CMS acted under a contract with the MDOC to deliver health care to Missouri inmates and is characterized as a state actor).

A corporation acting under color of state law such as CMS will only be held liable under § 1983 for its own unconstitutional policies. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004)(citing Monell v. Department of Social Services, 436 U.S. 658, 690 (1978)). "To defeat CMS's summary judgment motion, [plaintiff] ha[s] to create trialworthy issues as to whether there was a CMS policy, custom, or action by those who represent official CMS policy, that inflicted an Eighth Amendment injury." Southworth v. Missouri Department of Corrections, 258 Fed. Appx. 917, 917-18 (8th Cir. 2007); see also Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Sanders v. Sears Roebuck & Co., 984 F.2d 972, 976 (8th Cir. 1993). "A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by ... [an] official who has final authority regarding such matters." Bechtel v. City of Belton, Missouri, 250 F.3d 1157, 1160 (8th Cir. 2001)(internal quotation marks and citation omitted). An actionable custom is: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [CMS employees]; (2) the deliberate indifference to or tacit authorization of such

conduct by [CMS'] policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured pursuant to [CMS'] custom." Dashley, 345 F. Supp. 2d at 1022 (citing Jane Doe A. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990)).

Although plaintiff's second amended complaint does not plead a specific CMS policy that allegedly caused Burk's death, in opposition to summary judgment plaintiff argues that Nurse Arcand acted pursuant to an official policy. The policy she refers to is the CMS policy called "Chest Pain Assessment," which is attached as Exhibit 1 to her statement of material facts. Plaintiff claims that this policy requires an inmate to experience chest pain before being treated for an emergent heart related condition. Yet the policy does not state this at all. Instead, the guide contains "generally accepted medical recommendations for the evaluation, treatment and management of patients with chest pain." There is nothing in this guide telling medical personnel that they should not treat an inmate for a possible heart attack unless he complains of chest pain, and Nurse Arcand never testified that she was instructed by CMS to only evaluate an inmate for heart conditions if he complained of pain. While plaintiff may well have been able to withstand summary judgment on this record if her § 1983 claim were filed against Nurse Arcand, she has not established a jury question as to whether there was a

CMS policy or custom of denying appropriate cardiac care to inmates who exhibited Burk's signs and symptoms but no pain.  See Southworth, 258 Fed. Appx. at 918; Johnson, 452 F.3d at 973 (affirming grant of summary judgment to CMS because record established, at most, mere negligence, which does not rise to constitutional violation; plaintiff could not point to any policy, custom, or official action by CMS which resulted in delay of medical care); Clay v. Morgan, 79 Fed. Appx. 940, 941 (8th Cir. 2003) (summary judgment properly granted to CMS because plaintiff provided no evidence of any CMS policies or customs concerning the delay or denial of treatment to inmates with diseases like plaintiff's).  Because no facts support the existence of a custom or policy of CMS, summary judgment will be granted in CMS's favor on Count I of the second amended complaint.

In Count II of her second amended complaint, plaintiff brings a claim against CMS under Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080.  Without addressing the adequacy or timeliness of plaintiff's state law claim, I decline to exercise jurisdiction over it.  Generally, this Court only has jurisdiction to adjudicate claims based on either federal subject matter jurisdiction or diversity jurisdiction.  28 U.S.C. §§ 1331 & 1332.  However, a "federal court has jurisdiction over an entire action, including state-law claims, whenever the

federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one place." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349 (1988); see also 28 U.S.C. § 1367.  Upon a determination that defendant is entitled to summary judgment on plaintiff's federal claim, the Court has discretion to dismiss without prejudice plaintiff's attendant state law claim.  See Miner v. Local 373, 513 F.3d 854, 866 (8th Cir. 2008); Willman v. Heartland Hospital East, 34 F.3d 605, 613-14 (8th Cir. 1994) (district court did not abuse discretion in declining to exercise jurisdiction over state law claims when it granted summary judgment to defendants less than two weeks before trial); Rushing v. Simpson, 2009 WL 4825196, *9 (E.D. Mo. Dec. 11, 2009) (discretionary dismissal of state law claims upon decision to grant summary judgment to defendants on federal claims).  The Court, in its discretion, dismisses plaintiff's state law claim without prejudice.  A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#85] is granted on Count I of plaintiff's second amended complaint and denied on Count II of plaintiff's second amended complaint.

**IT IS FURTHER ORDERED** that Count II of plaintiff's second amended complaint is dismissed without prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of November, 2010.